UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| J.N., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 2:17-cv-00448-JEO |
| ) | |
| JEFFERSON COUNTY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
|     **Defendant.** ) | |

# MEMORANDUM OPINION[1]

Plaintiff J.N., as mother and next friend of M.N., a minor enrolled in a school program operated by Defendant Jefferson County Board of Education (the "Board"), filed a due process complaint against the Board in the Alabama State Department of Education, Special Education Division in which she alleged that the Board failed to provide M.N. a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). (Doc. 15-2 at 2-5). The hearing officer dismissed J.N.'s due process complaint. (Doc. 15-2 at 22). J.N. appealed the hearing officer's final order of dismissal to this Court. (Doc. 1). J.N. has moved for summary judgment on her claims that the hearing officer's order should be overturned and remanded because

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

the hearing officer erred when she found that J.N. had not stated claims upon which relief may be granted. (Docs. 15 & 15-1). For the reasons set forth herein, the Court grants J.N.'s motion for summary judgment.

I. **STANDARD OF REVIEW**

"[A]ny party aggrieved by the findings and decision made" by a hearing officer on a due process complaint "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

"Whether an educational program provided an adequate education under the [IDEA] 'is a mixed question of law and fact subject to *de novo* review.'" *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008) (quoting *CP v. Leon Cty. Sch. Bd. Fla.*, 483 F.3d 1151, 1155 (11th Cir. 2007)). A district court reviews a hearing officer's factual findings for clear error and reviews questions of law *de novo*. *Draper*, 518 F.3d at 1284. "When weighing the evidence, the District Court gives 'due weight' to the ALJ decision, and 'must be careful not to substitute its judgment for that of the state educational authorities.'" *R.L. v. Miami-Dade Cty. Sch. Bd.*, 757 F.3d 1173, 1178 (11th Cir. 2014) (quoting *Walker Cty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1297 (11th Cir. 2000)). And "when the District Court rejects the ALJ's conclusions, it is 'obliged to explain why.'" *R.L.*, 757 F.3d at 1178 (quoting *Loren F. ex rel. Fisher v. Atlanta*

*Indep. Sch. Sys.*, 349 F.3d 1309, 1314 n.5 (11th Cir. 2003)).

"[T]he usual [Federal Rule of Civil Procedure] 56 summary judgment principles do not apply in an IDEA case." *Loren F.*, 349 F.3d at 1313. Instead, a district court may "bas[e] its decision on the preponderance of the evidence" even when facts are in dispute. 20 U.S.C. § 1415(i)(2)(C)(iii); *see Loren F.*, 349 F.3d at 1313. The party seeking relief bears the burden of demonstrating that she was denied a FAPE. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 58 (2005). And district courts have broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *see Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985); *R.L.*, 757 F.3d at 1178.

## II. <u>BACKGROUND</u>

A state that receives federal funds under the IDEA must provide a FAPE to "all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). To comply with the IDEA, the state must engage in "child find," by which "[a]ll children with disabilities residing in the State, . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated . . . ." 20 U.S.C. § 1412(a)(3)(A). "Child find" "also must include . . . [c]hildren who are suspected of being a child with a disability . . . and in need of special education . . . ." 34 C.F.R. § 300.111(c)(1). Once the state

suspects that a child may be a child with a disability, the state must evaluate the child to determine whether the child is eligible to receive an individualized education plan (IEP). 20 U.S.C. § 1414(a)(1)(A), (d)(1)(A)(i). This matter concerns whether a complaint for a "child find" violation presents a justiciable controversy when the state evaluates the child after the complaint is filed and then determines that the child is eligible for special education.

M.N. was a fourteen-year-old student who attended Hueytown Middle School, a public school program operated by the Board. (Doc. 15-2 at 2).[2] On December 12, 2016, J.N., on behalf of M.N., filed[3] a complaint for due process in the Alabama State Department of Education, Special Education Division against the Board.[4] (Doc. 15-2 at 2). In her due process complaint, J.N. alleged that the Board knew or should have known that M.N. might be in need of special education, failed to identify and evaluate M.N. in violation of its "child find" obligations, and therefore failed to develop and implement an IEP and provide a FAPE. (Doc. 15-2 at 3-5). Among other prayers for relief, J.N. asked the Board to "[i]dentify and evaluate [M.N.] in all areas of suspected disability, i.e., ADD,

---

[2] The record provides limited factual information because the hearing officer dismissed J.N.'s due process complaint and therefore did not conduct a hearing.

[3] J.N. states that she filed the due process complaint on December 12, 2016 (Doc. 17 at 2), but it was signed on December 10, 2016 (Doc. 15-2 at 8).

[4] The Board notes in its Supplemental Response (Doc. 19) that M.N. was referred for evaluation by her math teacher on December 5, 2016. (Doc. 19 at 7 (citing A.R. 111 (Doc. 15-3 at 29))).

ADHD, and other behavior related disabilities," then develop and implement an IEP according to the requirements of the IDEA, and "provide compensatory education for [M.N.] including two years prior to the filing of the due process complaint when the school district knew or should have known that [M.N.] was a child in need of services." (Doc. 15-2 at 7-8). "Compensatory education" is a judicially created remedy by which the school district provides services prospectively to compensate for a past deficiency. *Draper*, 518 F.3d at 1280.

On January 18, 2017, the Board submitted its renewed motion to dismiss. (Doc. 15-2 at 23).[5] In the motion to dismiss, the Board argued that J.N.'s claims were "not ripe for determination or moot and therefore the Complaint fails to state a claim upon which relief may be granted" because the Board had not proposed or refused to take any action with which M.N.'s parents disagreed. (Doc. 15-2 at 23).

In a letter dated January 23, 2017, counsel for the Board notified the hearing officer that on January 20, 2017, the Board formally referred M.N. for evaluation and determination of eligibility for special education. (Doc. 15-3 at 23). The Board ultimately determined that M.N. was eligible for special education services. (Doc. 17 at 2-3). Although the IEP does not appear on the record, the parties do not dispute that M.N. has been receiving special education services pursuant to an

---

[5] The hearing officer denied the Board's initial motion to dismiss so that J.N. could correct a "copy and paste" error in her due process complaint. (Doc. 15-2 at 22-23). J.N. did not correct the error, so the hearing officer struck the information mistakenly included in the complaint. (Doc. 15-2 at 23). The Board then renewed its motion to dismiss. (Doc. 15-2 at 23).

5

IEP that J.N. has not challenged. (*See* Doc. 16 at 5; Doc. 17 at 2-3).

The hearing officer took notice that M.N. had been referred for evaluation after J.N. filed the due process complaint. (Doc. 15-2 at 25). Because of this, the hearing officer found that "there is no dispute regarding a proposal or refusal for identification or evaluation of [M.N.]" and therefore dismissed as moot J.N.'s claim that the Board failed to identify M.N. in all areas of suspected disability. (Doc. 15-2 at 25). In addition, because M.N. had not yet been evaluated and found to be a child with a disability, the hearing officer found that "there [was] no proposal or refusal to provide an [IEP] with special education and related services or compensatory education that [J.N.] may disagree with at this time." (Doc. 15-2 at 25). The hearing officer found, "[c]ompensatory education is only appropriate for a student who has been found to be eligible for services and suffered a delay in the provision of needed services," which had not yet occurred. (Doc. 15-2 at 25). Accordingly, the hearing officer found that J.N.'s claims were moot and premature, and therefore failed to state a claim upon which relief may be granted. (Doc. 15-2 at 25-26). J.N. did not receive a hearing.

On March 23, 2017, J.N. appealed the hearing officer's final order of dismissal to this Court. (Doc. 1). On August 25, 2017, she asked the Court to enter summary judgment on her claim that the hearing officer's order should be overturned because, according to J.N., "a child find claim is cognizable even if

there has not been a proposal or refusal by the IEP team." (Doc. 15-1 at 11). J.N. asks the Court to remand this case so that the hearing officer may adjudicate J.N.'s complaint at a due process hearing. (Doc. 15-1 at 20).

### III. ANALYSIS

The IDEA provides "that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education . . . ." 20 U.S.C. § 1415(a). One such safeguard is the due process complaint, which is:

> (6) An opportunity for any party to present a complaint--
>
> (A) with respect to *any matter relating to the identification*, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and
>
> (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint . . . .

20 U.S.C. § 1415(b)(6)(A)-(B) (emphasis added). A party who brings a valid due process complaint is entitled to a due process hearing on the merits of her complaint before an impartial hearing officer. 20 U.S.C. § 1415(1)(A). Pursuant to the Alabama Administrative Code, "[a]n impartial due process hearing is available when a parent or the public agency disagrees with any matter relating to a proposal or refusal to initiate or change the identification, evaluation, educational

7

placement of a child or the provision of FAPE to a child." Ala. Admin. Code 290-8-9-.08(9)(c).

Here, J.N. brought her due process complaint before the Board evaluated M.N., the Board evaluated M.N. shortly after J.N. filed her due process complaint, and the Board then determined that M.N. was eligible for special education and developed an IEP that J.N. has not challenged. According to the Board, therefore, J.N.'s claims were premature when she brought them and are now moot. The Court disagrees.

Because the failure to identify a child is, of course, a "matter relating to the identification . . . of the child," the IDEA plainly permits J.N. to challenge an alleged violation of the Board's "child find" obligations. 20 U.S.C. § 1415(b)(6)(A); *see Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1196-97 (11th Cir. 2018); *DL v. D.C.*, 860 F.3d 713, 717 (D.C. Cir. 2017); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010); *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010); *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009); *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007); *Jefferson Cty. Bd. of Educ. v. Lolita S.*, 977 F. Supp. 2d 1091, 1124-25 (N.D. Ala. 2013), *aff'd*, 581 F. App'x 760 (11th Cir. 2014). Moreover, there is no language in the IDEA that requires a party

to wait until after a proposal or refusal to evaluate before challenging a school district's "child find" efforts.

The Board's offer to evaluate, and the eventual evaluation and provision of services, does not moot J.N.'s claims. J.N. contends that the Board knew or should have known that M.N. was a child with a disability for some time before the Board referred M.N. for evaluation. (Doc. 15-2 at 3). J.N. argues that the Board therefore violated its "child find" obligations and consequently denied M.N. a FAPE. (Doc. 15-2 at 4). J.N. seeks compensatory education as relief. (Doc. 15-2 at 8). Therefore, a live controversy to which the hearing officer could give meaningful relief still exists.

The Eleventh Circuit has not addressed whether claims seeking compensatory education for alleged "child find" violations are premature if brought before a school district evaluates a child or moot if the school district then evaluates the child and provides special education. But, in *Boose v. D.C.*, 786 F.3d 1054 (D.C. Cir. 2015), the pertinent facts of which are nearly identical to the facts of this case, the D.C. Circuit held that such claims present a live justiciable controversy.

In *Boose*, a parent filed a due process complaint seeking compensatory education for her son when the school district allegedly failed to identify her son as a student with a suspected disability. A hearing officer denied the parent's claim.

The parent then formally asked the school district to evaluate her son. After the school district failed to act for three months, the parent challenged the hearing officer's decision and the school district's delay in federal district court. Before the district court could issue a decision, the school district completed the evaluation the parent had asked for, determined that the child was in fact eligible for special education, and developed an IEP for the child. Like J.N., the parent never challenged the adequacy of the IEP, but she argued that the school district still owed her son compensatory education for the time period during which the school district failed to identify and evaluate her son. Like the Board, the school district asked the district court to dismiss the case as moot because the school district evaluated the student, determined him to be eligible for special education, and developed an unchallenged IEP. And also like the Board, the school district argued that the parent had "already gotten everything she asked for," such that "even a victory could offer [the parent] no redress." *Boose*, 786 F.3d at 1057.

The D.C. Circuit reached the "commonsense conclusion" that the case still presented a live controversy. *Boose*, 786 F.3d at 1058. The D.C. Circuit explained:

> . . . [The parent] makes her intention clear: she asks the court to order [the school district] to devise a compensatory education plan to compensate [her son] for [the school district's child find] failures. This request clearly seeks compensatory education, not just a determination as to whether such compensation is appropriate.

10

> [The school district], moreover, conflates the compensatory education [the parent] seeks with the evaluation and IEP it offered. Specifically, it argues that the evaluation and the IEP satisfied [the parent's] request for compensatory education. But that cannot be. As noted above, and as [the school district] concedes, the IEP included no compensatory education. IEPs are forward looking and intended to conform to a standard that looks to the child's present abilities, whereas compensatory education is meant to make up for prior deficiencies. Unlike compensatory education, therefore, an IEP carries no guarantee of undoing damage done by prior violations, and that plan alone cannot do compensatory education's job. So the mere fact that [the school district] offered [the child] an IEP cannot render moot [the parent's] request for compensatory education.
>
> . . . Because [the parent] expressly requested compensatory education, and because [the school district] has never offered it, the complaint presents us with a live controversy, and [the parent's] case is not moot.

*Boose*, 786 F.3d at 1058 (internal citations, quotation marks, and alterations omitted). At least one other district court reached the same conclusion on similar facts for the same reasons. *See R.M.M. by & through Morales v. Minneapolis Pub. Sch.*, 2016 WL 475171, at *16 (D. Minn. Feb. 8, 2016) ("[T]his Court finds that a child-find violation may be found based on a school district's failure to act, that there is a corresponding right to a due process hearing on such a claim, and that child-find claims are not necessarily rendered moot by the provision of an evaluation."), *aff'd sub nom.*, *Special Sch. Dist. No. 1, Minneapolis Pub. Sch. v. R.M.M. by & through O.M.*, 861 F.3d 769 (8th Cir. 2017).

The Court agrees with the completely logical conclusions reached in the aforementioned cases, which appears to be unremarkable at the administrative

11

level. J.N. submitted orders from three other hearing officers who found that claims identical to J.N.'s claims were not moot or premature. (Doc. 15-3 at 36-42, 46-47).

The Board's counterarguments are unavailing. The Board's only contention grounded on language in the IDEA is that "[t]he IDEA's due process 'pleading' scheme reinforces [the] notion of a disagreement based on a proposal or refusal as the foundation of the IDEA claim." (Doc. 16 at 6). The Board references specifically 20 U.S.C. § 1415(b)(3), (b)(7)(A)(ii)(III), and (c)(2)(B)(i), sub-sections that establish pleading requirements for a party's due process complaint notice and the state's response. (Doc. 16 at 6-7). But none of those provisions restrict what a party may challenge under 20 U.S.C. § 1415(b)(6), which includes "any matter relating to the identification . . . of the child," nor do they have any bearing on justiciability.

The Board relies mostly on policy arguments, its own opinions of when litigation is appropriate under the IDEA, and numerous cases that are mostly immaterial to J.N.'s claims. (Doc. 16 at 6-21). The Board's most relevant case, *W.L.G. v. Houston Cty. Bd. of Educ.*, 975 F. Supp. 1317 (M.D. Ala. 1997), is inapposite. There, because a student had not given the school board an opportunity to address his concerns before he filed a request for a due process hearing, the district court found that "circumstances had not reached a point where a due-

process hearing was warranted." *W.L.G.*, 975 F. Supp. at 1325. But there the court was analyzing whether the due process hearing was an "action or proceeding" for which the IDEA would permit a claim for attorneys' fees. *Id.* The court did not address whether an offer to evaluate renders a "child find" claim moot. In contrast, the circumstances in this case had "reached a point where a due-process hearing was warranted." *Id*. J.N. alleged that the Board violated its "child find" obligations and therefore denied M.N. a FAPE, brought a valid due process complaint under 20 U.S.C. § 1415(b)(6) seeking appropriate relief for the alleged violation, and was therefore entitled to a due process hearing on the merits of her claims pursuant to 20 U.S.C. § 1415(f)(1)(A) and Ala. Admin. Code 290-8-9-.08(9)(c).

Without a due process hearing, the hearing officer could not develop a sufficient factual record from which this Court could render judgment on the merits. Remand is appropriate for the hearing officer to determine whether the Board violated its "child find" obligations, and, if so, the appropriate amount and type of compensatory education or other relief necessary, if any. *See Lolita S.*, 977 F. Supp. 2d at 1125 (remanding due process hearing decision for hearing officer "to determine the appropriate amount and type of compensatory education necessary"), *aff'd*, 581 F. App'x 760 (11th Cir. 2014).

## IV. CONCLUSION

Based on the foregoing, the Court finds that J.N.'s motion for summary judgment (Doc. 15), that the hearing officer's final order of dismissal is due to be vacated, and this matter remanded so that the hearing officer can conduct an impartial due process hearing on J.N.'s due process complaint according to the procedures established by the IDEA, implementing regulations, and the Alabama Administrative Code. An appropriate order will be entered.

**DATED** this 17th day of August, 2018.

*John E. Ott*

**JOHN E. OTT**
Chief United States Magistrate Judge